SEBASTIÁN BONET Y BERGA, Plaintiff and Appellee, *v.* HEIRS OF HORTENSIA HERNÁIZ ROZAS, Defendants; MANUEL HERNÁIZ ROZAS, Defendant and Appellant.

No. 6736. Argued May 22, 1935.—Decided November 22, 1935.

*Largé, Acevedo,* and *Lecároz* for appellant. *Salvador Suau* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Sebastián Bonet brought this action in the District Court of San Juan against the known heirs and brothers of Hortensia Hernáiz, named Cándido and Manuel, against John Doe and Richard Roe, as her unknown heirs, and against the Banco Comercial of Puerto Rico, to recover the amount of a mortgage. He alleged in substance as follows:

On January 5, 1923, Hortensia Hernáiz, single, a resident of Carranza, Province of Vizcaya, Spain, through her attorney in fact Cándido Hernáiz, mortgaged her house No. 54, on San Justo Street in this city of San Juan, in favor of Sebastián Bonet, to secure the sum of $30,000 which she agreed to repay within the term of four years, with interest thereon at the rate of 8½ per cent per annum, payable monthly. The contract was embodied in a public instrument bearing the same date as the record thereof in the corresponding registry of property.

On March 21, 1929, the same contracting parties entered into a contract of antichresis which was also embodied in a public instrument of that same date, whereby the debtor Hernáiz granted to the creditor Bonet the rents of the mortgaged house in order to apply the proceeds thereof to the payment of the interest accruing on the original debt and on a second mortgage constituted in favor of the Banco Comercial, and to the payment of delinquent and current taxes; it being further provided that the terms of the contract of antichresis would not affect, modify, or vary the obligations derived from the mortgage.

Accordingly, the creditor Bonet took actual possession of the house and has applied the rent thereof first to the pay-

ment of the interest in arrears on the two liens burdening the property, and then to the payment of delinquent and current taxes, and he rendered periodical accounts to the debtor Hernáiz, and after her death which occurred on January 31, 1932, to the defendant Cándido Hernáiz.

The term for the payment of the debt secured by the mortgage expired on January 5, 1927, without the debt having been paid either wholly or partially by the defendants nor by any of them. The interest was paid up to April 4, 1930. Interest is owed from that date on, and amounted on December 31, 1932, to $6,991.16, the total amount of the indebtedness being, therefore, $36,991.16.

The Banco Comercial was made a party defendant because Mrs. Hernáiz had constituted a mortgage in its favor on said house to secure the sum of $3,500.

Prayer was made for a judgment ordering the defendant heirs to pay to the plaintiff the amount claimed, the costs previously fixed at $1,000, and any interest which might accrue up to the time of such payment, and in default thereof, that the property be sold at public auction to satisfy the judgment, and that the second mortgage be thus canceled.

All the defendants were summoned but only Manuel Hernáiz appeared. He first presented a motion to strike out which was overruled. He then moved for a bill of particulars, and the plaintiff objected. The court sustained the motion. He then answered admitting some allegations of the complaint and denying others, and set up substantially that the antichresis contract had modified and varied the mortgage, effecting a novation, and that the plaintiff had theretofore been and continued to be in the possession of the house by virtue of the contract of antichresis which is still in force, for which reason the debt claimed is not liquidated nor recoverable. . As a special defense, he alleged that the complaint did not state facts sufficient to constitute a cause of action.

The case went to trial, and on February 26, 1934, the court finally decided it in favor of the plaintiff. In its statement of the case and opinion the court expressed itself, in part, as follows:

"In accordance with the testimony of the plaintiff and with several letters and detailed statements of account offered and admitted in evidence, neither the mortgage debtor nor any of the defendants has paid to said creditor, in whole or in part, the amount of his credit of $30,000, nor the interest claimed. And it further appears from the extensive examination of that same witness and from the accounting sheets admitted in evidence concerning said facts, evidence which was in no way contradicted, that the plaintiff duly complied with the terms of the antichresis contract, applying the rent money to the purposes agreed upon by the parties. By reason of said evidence, which merits full credit in the view of the court, this tribunal reaches the conclusion that the rent produced under the contract of antichresis, was expended for the purposes and applications to which it was destined by the parties, such as to pay the interest on the mortgages held by the plaintiff and by the Banco Comercial de Puerto Rico, delinquent and current taxes, repairs, and water and electric light used in the encumbered property. Therefore, the whole of the mortgage credit of the plaintiff with the interest thereon claimed has become due and is enforceable."

Feeling aggrieved by that judgment, the defendant Manuel Hernáiz took the present appeal to this court. He has assigned in his brief four errors committed, as he claims, by the district court, 1st, in sustaining a complaint which does not state facts sufficient to constitute the cause of action exercised; 2d, in holding that the mortgage was not novated by the contract of antichresis; 3d, in entertaining the action to recover on the mortgage before any rescission of the antichresis contract; and 4th, in finding that the plaintiff had fulfilled the terms of said contract. These assignments will be considered jointly. In discussing them, the appellant in his brief says, in part, as follows:

As regards the first assignment, "It is not alleged in the complaint that said contract (of antichresis) has been re-

scinded in any way, nor that Hortensia Hernáiz Rozas, or her heirs, have been restored in the enjoyment of the property, as provided by the second paragraph of section 1784 of the Civil Code of Puerto Rico, 1911 ed., in order that the creditor might free himself of the obligations which he assumed under the contract and which were further imposed on him by section 1783 of the cited Civil Code."

Regarding the second, "It can not be disputed that the provision in the contract of antichresis to the effect that Bonet would repay himself the amount of his mortgage and that he would collect from the proceeds of the rent produced by the property during the existence of the two mortgage liens mentioned in the contract of antichresis, that is, until the total payment of the mortgages of Bonet and of the Banco Comercial de Puerto Rico, implies a substantial modification of the form, manner, and term for foreclosing the mortgage sued upon; a modification which amounts to a novation of the conditions of payment of Bonet's mortgage."

As to the third assignment, "Whether the novation set up by this defendant as a defense in his answer to the complaint exists or not, and even assuming that there was no such novation, the controversy then would still be governed by the theory of the antichresis. And we shall presently demonstrate that, in accordance with such theory, the delivery to the debtor of the property given in antichresis is a prerequisite to the enforcement thereon of the creditor's claim.

"Sections 1782, 1783, and 1784 of the Civil Code provide as follows:

" 'Sec. 1782 R.C.C.: By antichresis a creditor acquires a right to receive the fruits of real property of his debtor, with the obligation to apply them to the payment of interest, if due, and afterwards to the principal of his credit.

" 'Sec. 1783 R.C.C.: A creditor is obliged to pay the taxes and charges which burden the estate, unless there is an agreement to the contrary.

" 'He shall also be obliged to pay the expenses necessary for its preservation and repair.

" 'From the fruits there shall be deducted the sums which he may employ for both purposes.

" 'Sec. 1784 R.C.C.: The debtor can not recover the enjoyment of the real property without previously paying in full what he owes to his creditor.

" 'But the latter, in order to free himself from the obligations imposed on him by the preceding section, may always compel the debtor to reenter upon the enjoyment of the estate, unless there be an agreement to the contrary.'

"By virtue of the first of these provisions, the creditor, Bonet, entered into the possession and enjoyment of the mortgaged property which he took under a contract of antichresis for the purposes specified in the agreement, which coincide with those set forth in sections 1782 and 1783 of the Civil Code of Puerto Rico above cited.

"This being so, it is clear that the plaintiff has no cause of action in the instant case (*sine actione agis*), as he is precluded therefrom by the very nature of the contract of antichresis still in force.

"If by the contract of antichresis, and in compliance with its provisions, Bonet is obliged to pay his mortgage, which he is collecting, out of the proceeds of the rent of the house given in antichresis, and is further obliged to pay the mortgage of the Banco Comercial de Puerto Rico; and, if, moreover, the law requires him (section 1783, Revised Civil Code) to pay the taxes and charges which burden the property, and other expenses connected therewith, how can he exercise the action brought, which was sustained by the court *a quo,* without first rescinding the contract of antichresis, which is still in force, and returning the property to the debtor, as provided by the second paragraph of section 1784 of the said Civil Code of Puerto Rico?

"The judgment appealed from is in conflict with the legal situation created by the contract of antichresis."

And as to the fourth assignment, "If, then, Bonet holds possession of the realty and receives the rents thereof in order to perform the contract of antichresis; and if it appears from the complaint that the mortgage debt has not been paid, is it not clear that the contract has not been performed and, hence, that the court *a quo,* in holding to the contrary, has violated the aforesaid provisions of the Civil Code?"

We recognize the skill with which the appellant has presented his case. It has not been an easy task for us to study it and decide it. Only by making a careful examination of the facts and the law have we been able to finally arrive at the conclusion that the errors assigned are nonexistent, and hence that the appeal should be dismissed and the judgment appealed from affirmed.

■ We think that the obligation secured by mortgage was not novated.

In the contract of antichresis itself the parties stipulated thus:

"SEVENTH: The terms of this contract are entirely independent of the rights and obligations arising between the mortgagor and the mortgagee, and therefore it does not at all modify, substitute, or vary the obligations derived from said mortgage contract."

It is provided in section 1158 of the Civil Code, 1930 ed., that—

"In order that an obligation may be extinguished by another which substitutes it, it is necessary that it should be so expressly declared, or that the old and new be incompatible in all points."

The mortgage subsisted. The effect of the new contract was to provide the creditor with a new means to enforce his credit, an additional security, and this court, in the case of *Iglesias* v. *Jefferson Standard Life Ins. Co.*, 45 P.R.R. 690, has said:

"It thus appears that defendant agreed with plaintiffs to dismiss the first foreclosure proceeding in consideration of an additional security, the nature of which does not clearly appear from the pleadings, but which might be an antichresis or an assignment of rents. It is maintained that this constituted a change in the form of payment, but really the only alteration which appears from the facts alleged is that payment from specific funds was assured to defendant, that is, the rents, instead of having to depend only on the general funds which plaintiffs might have. And this so-called change in the form of payment was nothing more than the grant of an additional security to defendant, as it appears from the complaint. It

is elementary that the grant of a security does not by itself constitute a novation of the debt secured.''

■ But it is insisted that even though the mortgage were not novated, the fact is that by virtue of the contract of antichresis the creditor has been and continues to be in the possession of the mortgaged realty receiving its rents, and he may not sue to enforce his claim until he returns the property to its owner, the debtor.

We know the provisions of sections 1782, 1783, and 1784 of the Civil Code—sections 1781, 1782, 1783, 1930 ed.—and we know that the last of these sections provides that when the creditor wishes to free himself from the obligations imposed upon him by the second section, that is, the payment of the taxes and charges which burden the property, he ''may always compel the debtor to re-enter upon the enjoyment of the estate unless there· be an agreement to the contrary''; and the creditor did not exercise that right in the instant case.

But the provisions cited by the appellant are not the only ones appearing in the Civil Code in regard to contracts of antichresis. There is also section 1784, 1930 ed., which reads as follows:

''The creditor does not acquire the ownership of the real property by nonpayment of the debt within the term agreed upon. Any stipulation to the contrary shall be void. But in this case the creditor may demand, in the manner prescribed in the law of civil procedure, the payment of the debt or the sale of the realty.''

Commenting upon this provision Manresa says, in part:

''But although it is true that the provision and the legal basis are the same in the case of a pledge and in that of an antichresis, the consequences of a default are different, for in the first case the creditor may proceed by himself to sell the pledge in the manner provided by section 1872, as construed by the judgments and decisions which we cited in the commentary on that section, while, on the contrary, the creditor in antichresis, like a mortgagee, is not expressly authorized to alienate the property by himself but, in every case, if the debt is not paid when due he has no other right than

to demand, in the manner prescribed by the Code of Civil Procedure, the payment of the debt or the sale of the realty given in antichresis" 12 Manresa, *Comentarios al Código Civil Español* (4th ed.), p. 479.

In referring to the same matter Sánchez Román says:

"Contrary to what occurs in the contract of pledge, where, notwithstanding the requirement that two auctions must be held, the pledgee may thereafter take title to the pledge in payment of the debt, in the antichresis this is definitely prohibited, and any stipulation to the contrary is void, and the right of the creditor in antichresis is confined either to relinquish the enjoyment of the property because it has proved burdensome to him, as we have previously indicated, or to demand, in the manner provided by the Code of Civil Procedure, the payment of the debt or the sale of the realty (section 1884)." 4 Sánchez Román, *Derecho Civil* (2d ed.), p. 990.

We have examined the contract of antichresis exhibited with the complaint and it does not appear therefrom that any definite number of months or years was fixed as a term for the contract. It was provided therein that the creditor would receive the rents of the house "for the duration of the mortgage liens and the extensions thereof, which encumber said property," thus making the duration of the antichresis to depend upon the subsistence of the mortgage; and, as the maturity of the mortgage and the nonpayment thereof have been alleged and proved, the right of the creditor to recover the debt by judicial action is clear.

Is the return of the realty to the debtor a condition precedent to the exercise of the action of debt?

The law does not so direct. The commentators to whom we have referred say nothing on this point. The question, so far as we know, has not been settled by the courts.

Both sections, 1783 and 1784 of the Civil Code, 1930 ed., have independent force since they refer to different situations.

When the creditor wishes to free himself from the obligations imposed upon him by the contract of antichresis, which,

according to Manresa, "is executed exclusively in favor of the creditor" (12 Manresa, *Comentarios al Código Civil*, 4th ed., p. 477), he may, in conformity with the provisions of section 1783, compel the debtor to re-enter upon the enjoyment of the estate, in the absence of an agreement to the contrary.

That is not the situation in the case at bar. Here the question is not whether the creditor continued under the obligation to apply the rents to the payment of the charges on the property as long as he remained in the possession and administration of the realty, rendering, of course, an account thereof as provided by law. What is involved here is the recovery of the original debt for failure to pay the same within the agreed term, a situation which is foreseen and regulated by section 1784, and even though we realize that the case would be simpler if the property were returned at the time the action of debt should be brought, we fail to see that such return is absolutely necessary. What is required is that at the time the complaint is filed the agreed term for payment should have already elapsed, without such payment having been made.

It is possible to liquidate the debt up to a given date and to act upon such liquidation. If the administration continues because the creditor remains in possession of the realty, said creditor will be obliged to render another account which will cover the new period until the matter is definitely settled.

Such is our interpretation of the law. The mortgage was not foreclosed by summary process. The claim was enforced by an ordinary action, which affords the defendant an ample opportunity to defend. The creditor did not confine himself to the presentation in evidence of the documents establishing the execution of the instrument sued upon, but starting from the basis of the new factual situation created by the second contract—that of antichresis—he introduced evidence as to the final outcome of his administration. And taking

into account the result of the evidence, the court rendered the judgment appealed from. The defense set up by the only defendant who appeared in order to oppose the claim was a technical one. He did not deny the existence of the debt. He confined himself to the assertion, in various forms, that the action did not lie because he was not put in possession of the property which he had first mortgaged and then given in antichresis for the payment of the debt.

The inadequacy of the administration to satisfy the purposes for which it was created, the maturity of the obligation, and the liquidation thereof having been shown, we can not say that any injustice was done in adjudging the debtor to pay what he owed according to the evidence, or in directing that if he failed to do so the property which he had previously mortgaged to secure the payment of the obligation, should be sold at public auction and the proceeds of the sale applied to the satisfaction of the debt. The right of the debtor to compel the creditor to render an account of the administration of the realty, from the date of the liquidation which served as a basis for the judgment and during the whole period that he may remain in possession of the property up to the time of its sale, if it should be sold, is independent, and it subsisted to be enforced in a proper proceeding.

For the reasons stated, the appeal should be dismissed and the judgment appealed from affirmed.